# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

**KENNETH JAY RANEY**,

Petitioner,

v.

**LISA J. HOLLINGSWORTH,**

Respondent.                                              No. 08-0422-DRH

## MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

### I. Introduction and Background

This is a petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2241 (Doc. 1). Kenneth Jay Raney, is a prisoner confined at USP-Marion and challenges the decisions of two prison disciplinary hearings wherein 7 (seven) days of his good time credits were revoked. Respondent filed a response to the petition (Doc. 11) and thereafter Raney filed a motion for summary judgment (Doc. 13).

Pursuant to **28 U.S.C. § 636(b)(1)(B)**, Magistrate Judge Philip M. Frazier submitted a Report and Recommendation ("the Report") on November 24, 2008 (Doc. 15). The Report recommends that the Court deny Raney's 28 U.S.C. § 2241 petition for writ of habeas corpus (Doc. 1); deny Raney's motion for summary judgment (Doc. 13) and dismiss Raney's cause of action. Specifically, Judge Fraizer found that Raney failed to properly exhaust his administrative remedies, that he has

not shown cause and prejudice for failure to properly exhaust his administrative remedies and that Raney cannot show that he was deprived of due process regarding the disciplinary hearings as he admitted that he engaged in the charged conduct.

The Report was sent to the parties with a notice informing them of their right to appeal by way of filing "objections" within ten days of service of the Report. To date, Raney filed objections to the Report (Doc. 16). Raney raises three objections: (1) that his appeal was timely, i.e., he did exhaust his administrative remedies; (2) that evidence and witnesses were withheld and (3) his request for protective custody was ignored after Unit Manager Wheeler recommended it.

Since timely objections have been filed, this Court must undertake *de novo* review of the Report. **28 U.S.C. § 636(b)(1)(B); FED. R. CIV. P. 72(b); Southern District of Illinois Local Rule 73.1(b);** ***Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992)**. The Court may "accept, reject or modify the recommended decision." ***Willis v. Caterpillar Inc.*, 199 F.3d 902, 904 (7th Cir. 1999)**. In making this determination, the Court must look at all the evidence contained in the record and give fresh consideration to those issues to which specific objection has been made. *Id.* Based on the pleadings and the applicable law, the Court adopts the Report.

## II. Facts

Raney is currently incarcerated at United States Penitentiary in Marion, Illinois. From May 1, 2002 to April 25, 2007, Raney was incarcerated at the Federal

Correctional Institution in Pekin, Illinois.[1] On November 13, 2002, a disciplinary report was filed that accused Raney of possessing a radio belonging to another inmate. A hearing was held before the Unit Disciplinary Committee ("UDC") on November 16, 2002. Raney told the UDC that he had borrowed another inmate's radio. At the hearing, the UDC found Raney guilty of the violation and sanctioned him to a loss of 15 days of commissary.

Thereafter in February 2003, Raney requested protective custody.[2] Pursuant to policy, the institution placed him in a special housing unit and interviewed the circumstances underlying the request. Suzanne Wheeler, R. Farlin and Dayna Buck all prepared reports. Wheeler and Buck also gathered supplemental information and prepared additional reports.

Raney remained in the special housing unit and the Special Investigative Services ("SIS") completed a threat assessment on May 27, 2003. At this time, Raney continued to claim that he had been threatened and that he needed protective custody. SIS determined that Raney's allegations could not be verified and agreed with the earlier investigation that his protective custody status could not be substantiated. SIS believed that Raney was attempting to manipulate a transfer to

---

[1] Raney was convicted of transporting with intent to engage in a sex act with juvenile/attempt to manufacture child pornography in violation of 18 U.S.C. § 2423(B) and 18 U.S.C. § 2251(1). On April 23, 2002, he was sentenced to 145 months imprisonment.

[2] Raney claimed that he needed protective custody because of some involvement he had in loaning money out to some inmates so that they could bring drugs into the institution. Raney stated that he did not do drugs and admitted he owed money for "football stuff" but that debt was unrelated to the current allegations.

another institution due to possible debts he may have incurred from gambling. Therefore, SIS concluded that Raney should be considered an unverified protective custody case and ordered to return to general population.[3]

In June 2003, Raney was accused of violating prison disciplinary rules by refusing an order to move to a cell in the general population compound. This charge did not result in a disciplinary ticket. On July 16, 2003, Raney was issued a disciplinary report accusing him of refusing to obey an order from a staff member to accept program assignment. Raney was notified of the charge that same day. In responding to the charge, Raney stated that it was true but indicated that his actions were justified by the threats. Further, he sought to prove that a threat to his safety had been explained and verified.

The UDC held a hearing on July 19, 2003. The UDC referred the matter to a disciplinary hearing officer ("DHO") for a decision. The UDC recommended disciplinary segregation and loss of good conduct time. That same day, Raney received notice of his rights at the hearing and notice of the hearing.

On August 20, 2003, the DHO held a hearing. At the hearing, Raney had a staff representative. The DHO considered a report stating that Raney was ordered to move to general population and that he refused to move. The DHO also considered Raney's argument that he had been threatened and that his need for

---

[3] On June 23, 2003, Wheeler wrote an addendum to her protective custody investigation of March 23, 2003. She stated that based on new information she received from Raney's attorney, she believed that Raney should be considered a verified protection case. On July 9, 2003, SIS followed up on the information that was provided by Raney's attorney and found it to be unreliable and unsubstantiated.

protection had been demonstrated to and verified by prison staff members. Further, the DHO considered a statement made by an inmate witness claiming that Raney had been "pressed." The DHO elected not to call the other two witnesses because their written reports adequately described the events and that their conclusions resulted in the accusation and therefore were considered to be adverse to Raney's case.[4]

The DHO found that Raney committed the act as charged. The DHO relied on the reporting officer's statement that Raney refused repeated orders to leave the special housing unit as well as the reports suggesting that the staff investigated but were unable to verify Raney's claim for protective custody. The DHO revoked 7 days of good conduct time, imposed 15 days of disciplinary segregation, and suspended commissary, telephone and visitation privileges for 365 days. The DHO informed Raney that some of the sanctions would be reconsidered if he returned to general population. Raney received a copy of the DHO report on August 29, 2003. This report also informed him of his appeal rights.

On September 3, 2003, Raney returned to general population and asked for reinstatement of the suspended privileges. On September 22, 2003, the DHO prepared a memorandum requesting restoration of Raney's visitation, phone and commissary privileges.

On multiple dates in September and October 2003, Raney prepared grievances asking the regional director to review his incident report. These

---

[4]The DHO did not consider Wheeler's supplement and declined to call Wheeler or Buck as witnesses.

grievances were received and rejected. On October 1, 2003, the regional director prepared a rejection notice giving Raney 15 days to correct the error and resubmit his grievance. Raney did not receive that rejection notice until October 15, 2003. He submitted a corrected grievance that same day. The regional director did not receive Raney's corrected grievance until October 22, 2003. On October 29, 2003, the regional director rejected the corrected grievance as untimely. On November 18, 2003, Raney submitted an appeal to the general counsel. The general counsel received the appeal on November 25, 2003. On December 4, 2003, the general counsel denied Raney's appeal stating that Raney only may submit up to one continuation page; that it concurred with the regional office's rationale for rejecting his appeal and that the appeal of the regional officer's rejection was untimely.

### III. <u>Analysis</u>

A petition seeking habeas corpus relief is appropriate under 28 U.S.C. § 2241 when a prisoner is challenging the fact or duration of his confinement. ***Preiser v. Rodriquez*, 411 U.S. 475, 490 (1973);** ***Waletzki v. Keohane*, 13 F.3d 1079, 1080 (7th Cir. 1994)**. The writ of habeas corpus may be granted where the prisoner is in custody in violation of the Constitution or laws or treaties of the United States. **28 U.S.C. § 2241(c)(3)**.

A petitioner like Raney must exhaust his administrative remedies before he is eligible for habeas corpus relief. ***Carnine v. United States*, 974 F.2d, 927 (7th Cir. 1992);** ***United States v. Mittelsteadt*, 790 F.2d 39, 41 (7th Cir. 1986);**

*see DelRaine v. Carlson*, 826 F.2d 698, 703 (7th Cir. 1987): *Sanchez v. Miller*, 792 F.2d 694, 697 (7th Cir. 1986). Exhaustion of available administrative remedies "'means using all the steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)(quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Proper use of the prison grievance system requires a prisoner "to file complaints and appeals in the place, and at a time [as] the prison's administrative rules require." *Pozo*, 286 F.3d at 1025: *Dole v. Chandler*, 438 F.3d at 809; *see also Woodford*, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules"). If the prisoner fails to properly use the prison's grievance process, the prison administrative authority can refuse to hear the case, and the prisoner's claim can be considered indefinitely unexhausted. *Pozo*, 286 F.3d at 1025; *see also Woodford*, 548 U.S. at 89-90.

A prison's failure to timely file a grievance in accordance with the prison's grievance procedures constitutes a failure to exhaust properly. *See Woodford*, 458 U.S. at 87-90. A prisoner's failure to appeal the denial of a grievance and pursue his claim at each level of available administrative review constitutes a failure to exhaust. *Dixon v. Page*, 291 F.3d 485, 489 (7th Cir. 2002).

The Bureau of Prisons has a multi-tiered administrative remedy process through which an inmate may seek a remedy regarding aspects of confinement. **28**

**C.F.R. § § 542.10-542.19**. Under this program, in most instances, a federal prisoner files his initial grievance on a BP-9 form. **28 C.F.R. § 542.14**. If dissatisfied with the disposition of the grievance, the inmate may appeal to the regional director using a BP-10 form. **28 C.F.R. § 542.15**. However, the procedure is different for appeals from a disciplinary hearing. "DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located." **28 C.F.R. § 542.14(d)**. If dissatisfied with the result on the regional office level, further appeal to the general counsel is perfected using a BP-11 form. **28 C.F.R. § 542.15**. Appeal to the general counsel is the final level of administrative appeal. *Id*.

Here, Raney has failed to advance his claims regarding the August 20, 2003 DHO hearing properly through the BOP's administrative scheme and, as such, has not exhausted his administrative remedies.[5] Raney was instructed on how to correct the defects in his grievances and was given a time frame within which to resubmit his grievances. However, he continually failed to file correctly, thus the grievances were rejected. The record does not demonstrate cause for his failure to exhaust.

Even assuming *arguendo* that Raney did exhaust his administrative remedies, the Court finds that Raney is not entitled to relief under 28 U.S.C. § 2241.

28 U.S.C. § 2241 permits district courts to grant relief to prisoners "in

---

[5] The record indicates that Raney did not submit a written grievance as to his November 2002 UDC hearing.

custody in violation of the Constitution or laws or treaties of the United States." Under the Fifth Amendment's due process clause, federal inmates are guaranteed certain minimum procedural safeguards with respect to disciplinary hearings. When the loss of good-time credit is a possible sanction for a disciplinary infraction, an inmate must receive the following procedural safeguards in connection with prison disciplinary proceedings in order to satisfy the requirements of due process: "'(1) advance written notice of the disciplinary charges; (2) an opportunity … to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.'" **McPherson v. McBride, 188 F.3d 784, 785-86 (7th Cir. 1999)(quoting *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 455, 454 (1985))**.

Moreover, in order to comply with due process, a finding of guilt cannot be arbitrary. The minimum requirements of due process demand that the findings of a prison disciplinary board have the support of "some evidence in the record." **Hill, 472 U.S. 454**. This is a lenient standard, however, requiring no more than "a modicum of evidence." **Webb v. Anderson, 224 F.3d 649, 652 (7th Cir. 2000)**. "Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." **Id.; Lenea v. Lane, 882 F.2d 1171, 1175 (7th Cir. 1989)("Although 'some evidence' is not much … it still must point to the accused's guilt.")**. The

relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. **Hill, 472 U.S.C. at 455-56**.

Raney claims that he was not afforded due process because the DHO did not call two witnesses and Wheeler's June 23, 2003 Addendum was not considered. The Court rejects this argument. Although prison disciplinary committees may deny witness requests that threaten institutional goals or are irrelevant, repetitive, or unnecessary, they may not exclude witnesses requested by an offender with no explanation at all. **Piggie v. Cotton, 342 F.3d 660, 662 (7th Cir. 2003)(citing Whitlock v. Johnson, 153 F.3d 380, 388 (7th Cir.1998); Forbes v. Trigg, 976 F.2d 308, 317-18 (7th Cir.1992)**). Further, inmates are not afforded the full "panoply" of rights as criminal defendants. **Henderson v. U.S. Parole Commission, 13 F.3d 1073, 1077 (7th Cir.), cert. denied, 513 U.S. 926 (1994)**.

Here, the BOP afforded Raney with due process. He received written notice of the charge, he had a staff representative at the hearing, and he was allowed the opportunity to present witnesses and documentary evidence. Further, he admitted that he engaged in the conduct charged. Lastly, he was provided a written report explaining the DHO's findings including why he did not allow Raney to call the witnesses or consider Wheeler's addendum and why the discipline was warranted. Courts must defer to the findings of correctional officers whenever some evidence of guilt exists. **See Mendoza v. Miller, 779 F.2d 1287, 1292 (7th Cir. 1985)("Prison administrators therefore should be accorded wide-range**

**deference in adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."**). Because the record shows that Raney's sanction was supported by adequate evidence, he has failed to demonstrate the he is in custody in violation of the Constitution or laws of the United States as required under § 2241. Simply put, Raney has failed to show that the process he received before losing good time credits was constitutionally inadequate.

## IV. Conclusion

Accordingly, the Court **ADOPTS** the Report (Doc. 15) and **DENIES** Raney's petition of writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) and his motion for summary judgment (Doc. 13). The Court finds that Raney failed to exhaust his administrative remedies. Further, the Court finds that even if Raney did exhaust his administrative remedies, he is not entitled to relief under 28 U.S.C. § 2241. The Court **DISMISSES** Raney's petition. Lastly, the Court **ORDERS** the Clerk of the Court to enter judgment reflecting the same.

**IT IS SO ORDERED.**

Signed this 27th day of July, 2009.

/s/     *David R Herndon*
**Chief Judge
United States District Court**